Filed 11/18/22  Purvey v. YMCA of Burbank CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JEFFREY NATHAN PURVEY, | B309041 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 19STCV03660) |
| v. | |
| YOUNG MEN'S CHRISTIAN ASSOCIATION OF BURBANK, CALIFORNIA, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court for Los Angeles County, Stephen I. Goorvitch, Judge.  Affirmed.

Beloryan & Manukyan, Haik A. Beloryan and Vahe Shakhgeldyan for Plaintiff and Appellant.

Olson Law Group, Sonali Olson, Joel Eric Witzman and Kathy D'Andrea for Defendant and Respondent.

Appellant Jeffrey Nathan Purvey fell on a basketball court owned by respondent Young Men's Christian Association of Burbank, California (YMCA). Purvey sued YMCA for negligence. The trial court granted summary judgment for YMCA. (Code Civ. Proc., § 437c.)

On de novo review, we affirm. YMCA had no duty to protect Purvey from falling, which is an inherent risk of playing basketball. He presented no evidence that YMCA unreasonably increased the risk of a fall by maintaining an overcrowded, debris-filled, dilapidated, worn, uneven floor. The record does not support his unpled, speculative claim that he may have slipped on something. Judgment is proper because there is no triable issue of material fact.

## FACTS AND PROCEDURAL HISTORY
### *Purvey's Allegations*

Purvey's complaint alleges that on February 19, 2017, YMCA had a hazardous condition "in the vicinity of its basketball courts . . . namely the overcrowding and exceeding of the maximum capacity limitations, as well as the dilapidated, worn out, uneven, old, debris filled, and shifting floors." Further, "the defective and dilapidated condition of the floors in the gym . . . made Plaintiff's injury imminent. By allowing such hazardous conditions to persist on its premises, Defendant YMCA's gross negligence caused Plaintiff to fall and sustain severe injuries."

### *YMCA's Summary Judgment Motion*

YMCA argued that it is entitled to summary judgment because Purvey signed a liability waiver and injury from a fall is a risk he assumed by playing basketball. It is undisputed that Purvey fell while practicing a layup maneuver, and he knows that one can be injured while playing basketball. He alleged that

the gym was overcrowded and dilapidated but later claimed the floor was wet.

In support of its motion, YMCA offered a "Waiver of Liability, Assumption of Risk, and Indemnity Agreement" (Waiver) signed by Purvey.  Purvey testified that he signed the Waiver but did not read it.  He understands a release and waiver means that if an operator maintains its facility properly, users "take the risk" when they come to the gym.

Purvey knows, from years of experience, that basketball poses a risk of injury; he once sprained an ankle while playing.  When he entered the YMCA gym, he saw others playing a basketball game, some distance away.  Purvey testified that as he approached the hoop on a layup, "I made sure where I was going had no people."  He took fewer than 10 running steps, then slipped on a "liquid substance."  He did not see anything on the floor, testifying that he would not notice water unless it was a "huge puddle."  None of the 20 to 25 people taking turns shooting at the same hoop slipped or fell.

Purvey did not look at the floor after falling to see if it was wet.  If there was something wet, he does not know if it was sweat, water, or anything else.  It is undisputed that he does not know how long the liquid was there.

### *Purvey's Opposition*

Purvey did not dispute signing a sheet at the YMCA front desk.  He argued that the Waiver written on the sheet is not enforceable and that YMCA committed gross negligence by failing to properly maintain its facility or mitigate risks.

Purvey went to YMCA using a guest pass; he is not a YMCA member.  He was greeted by an employee with a sign-in sheet, who did not explain the nature of the document or ask if

Purvey had any questions.  Purvey signed the sheet but did not receive a copy of it.  He previously went to YMCA to play basketball and lift weights, one week before his accident.

Purvey testified that the YMCA gym has six basketball hoops along its perimeter.  A kids' league game was taking place on the opposite side of the gym.  Spectators stood on the sidelines, though none were on the court itself.  Some 20 to 25 people shared the hoop with Purvey, practicing shots.  Purvey did layups and jump shots for 20 to 30 minutes before falling.

Cynthia Tafolla accompanied Purvey to the YMCA.  She recalled that many people were at the gym.  She saw a young boy walking and drinking water, but she did not say he spilled it on the court.  She saw Purvey go for a layup; he went "pretty high" for his vertical leap, then he was "just falling on the ground."  Asked if she saw Purvey slip, Tafolla answered, "No.  I just remember seeing him up in the air."

YMCA used a professional cleaning company that came in when the facility was closed.  Steven McCallum, a YMCA worker, did housekeeping as necessary.  He estimates the size of the facility as around 350,000 square feet.

McCallum was trained to clean and inspect the basketball court.  He inspects the floor whenever he walks through, usually three or four times a day, "to make sure it was clean, dry and picked up at all times."  McCallum inspected the basketball court at around 11:00 a.m. on the day Purvey came in.  People do not walk around the court carrying water, though McCallum has seen people drinking water while sitting on benches at the sidelines.  He agreed that basketball players typically sweat.  YMCA staff members do not clean sweat from the floor during play.

4

Brandon Mullen oversees the YMCA housekeeping department. He instructed McCallum to monitor the gym but not on a particular schedule. Mullen acknowledged that water may create a danger on a basketball court. There is signage that no food or drinks are allowed; people can use a drinking fountain in the gym, which prevents spills.

### YMCA's Reply

YMCA replied that Purvey cannot avoid the Waiver by claiming he failed to receive a copy of it. Purvey did not show YMCA committed gross negligence in maintaining its facility. Purvey testified that he did not see water on the gym floor and the crowds did not cause him to fall. Purvey fell while jumping, an inherent risk of basketball.

### The Court's Ruling

The court granted YMCA's motion, after rejecting the declaration of Purvey's expert for lack of foundation. The court cited alternate grounds for granting the motion: (1) Purvey asserts liability "on a basis not raised in the complaint" and (2) the primary assumption of risk doctrine bars the action. The court did not decide if the Waiver bars suit.

The court found that falling is an inherent risk of playing basketball. There is no showing that YMCA increased the risks. There is no evidence Purvey slipped on anything. He never saw liquid before or after falling and assumed he might have slipped on liquid. His speculation does not create a triable issue. Tafolla did not testify that she saw liquid on the floor, only that she saw someone drinking water in the gym. If Purvey encountered

sweat dripping from other players, this is an inherent risk.[1] Without a showing of water on the floor, the expert's opinion—based on his "understanding" that Purvey slipped on water—lacks foundation.[2] YMCA's failure to constantly inspect and clean is irrelevant, absent a showing that there was anything on the floor. Crowding in the gym had nothing to do with Purvey's fall. The court entered judgment for YMCA.

## DISCUSSION

### 1. Appeal and Review

The judgment is appealable. (Code Civ. Proc., § 904.1., subd. (a)(1).) Summary judgment is appropriate when no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).)

We independently examine the record to determine if triable issues of fact exist. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767.) Evidence presented in opposition to summary judgment is liberally construed. (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618.) A negligence claim requires proof of a duty, breach, causation, and

---

[1] At the trial court hearing, plaintiff's counsel "absolutely" agreed that "sweating is a natural part of playing basketball" and sweat may drip on the floor.

[2] Purvey did not challenge the ruling in his opening brief, forfeiting any claim of error. We disregard an argument, at the end of his reply brief, about the admissibility of the expert's opinion. (*Julian v. Hartford Underwriters Ins. Co.* (2005) 35 Cal.4th 747, 761, fn. 4 [" ' " 'points raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before' " ' "].) He did not explain why the argument is tardy, and YMCA had no opportunity to respond to it.

damages. (*Ibid*.) The element of duty is a question of law and is amenable to summary judgment. (*Knight v. Jewett* (1992) 3 Cal.4th 296, 313.)

### 2. Purvey Asserts Facts Not Raised in His Pleading

The trial court wrote that because the complaint "makes reference to 'debris' and 'overcrowding' but not any liquid . . . to the extent Plaintiff predicates this action on slipping on liquid, the claim is barred." We agree. Purvey delineated the facts in his complaint: They have nothing to do with slipping on liquid. He did not prove the facts as alleged or amend his complaint to allege different factual bases for his claim. On this basis alone, summary judgment was properly granted.

A summary judgment motion allows a defendant " 'to show that material factual claims arising from the pleadings need not be tried because they are not in dispute.' " (*FPI Development, Inc. v. Nakashima* (1991) 231 Cal.App.3d 367, 381; *Nieto v. Blue Shield of California Life & Health Ins. Co.* (2010) 181 Cal.App.4th 60, 74 [pleading determines the scope of summary judgment].) The motion must "negate plaintiff's theories of liability *as alleged in the complaint*; that is, a moving party need not refute liability on some theoretical possibility not included in the pleadings." (*Hutton v. Fidelity National Title Co.* (2013) 213 Cal.App.4th 486, 493.)

Purvey alleges that he fell because the YMCA gym exceeded maximum capacity, with "dilapidated, worn out, uneven, old, debris filled, and shifting floors" that made his injury "imminent." The pleading did not put YMCA on notice that liquid on the floor proximately caused Purvey's injury.

It is true, as Purvey urges, " 'we generally construe the pleading broadly.' " (*Soria v. Univision Radio Los Angeles, Inc.*

7

(2016) 5 Cal.App.5th 570, 585.) But " '[a] defendant moving for summary judgment need address only the issues raised by the complaint; the plaintiff cannot bring up new, unpleaded issues in his or her opposing papers.' " (*Ibid*.) Purvey is bound by the rule that " '[a] party may not oppose a summary judgment motion based on a claim, theory, or defense that is not alleged in the pleadings,' " which makes his belated claim of liquid on the floor " 'irrelevant.' " (*Jacobs v. Coldwell Banker Residential Brokerage Co.* (2017) 14 Cal.App.5th 438, 444.)

### 3. Assumption of Risk

The trial court found Purvey assumed the risk of injury by engaging in an inherently risky sport or activity. "The primary assumption of risk doctrine rests on a straightforward policy foundation: the need to avoid chilling vigorous participation in or sponsorship of recreational activities by imposing a tort duty to eliminate or reduce the risks of harm inherent in those activities. It operates on the premise that imposing such a legal duty 'would work a basic alteration—or cause abandonment' of the activity." (*Nalwa v. Cedar Fair, L.P.* (2012) 55 Cal.4th 1148, 1156 (*Nalwa*) [injury on a bumper car ride].) "[A]ctive *recreation*, because it involves physical activity and is not essential to daily life, is particularly vulnerable to the chilling effects of potential tort liability for ordinary negligence." (*Id.* at p. 1157.)

The doctrine applies to YMCA. Operators of recreational facilities, including organizations without extensive budgets, "might not easily afford insurance to cover injuries that are inherent risks of the activity; nor could they readily collect large fees from participants to cover that cost. The primary assumption of risk doctrine helps ensure that the threat of litigation and liability does not cause such recreational activities

8

to be abandoned or fundamentally altered in an effort to eliminate or minimize inherent risks of injury." (*Nalwa, supra,* 55 Cal.4th at p. 1162.) Though an operator has no duty to eliminate inherent risks, it does "owe participants the duty not to unreasonably increase the risks of injury beyond those inherent in the activity." (*Ibid.*)

The inherent risk of a recreational activity is determined by "common experience . . . case law, other published materials, and documentary evidence introduced by the parties on a motion for summary judgment." (*Nalwa, supra,* 55 Cal.4th at p. 1158.) For example, our Supreme Court determined that being "*intentionally* hit" by a pitcher is an inherent risk of baseball "accepted by custom," even if it is forbidden by the rules of baseball. (*Avila v. Citrus Community College Dist.* (2006) 38 Cal.4th 148, 164–165.)

Basketball is an inherently risky sport. (*Yarber v. Oakland Unified School Dist.* (1992) 4 Cal.App.4th 1516, 1520 [colliding with a wall is an inherent risk of playing basketball].) "An interested person need only turn on one of the week's many televised basketball games to see players falling, running or being pushed out of bounds onto reporters' tables, television cameras or fans seated near the court." (*Ibid.*)

Purvey engaged in an inherently risky activity where participants routinely fall. Primary assumption of risk bars recovery unless he can show YMCA "unreasonably" increased the risk of injury. (*Nalwa, supra,* 55 Cal.4th at p. 1162.) Purvey did not show he was injured by the crowd, or how the crowd caused his fall; he did not show the floor was uneven, worn, dilapidated, old or filled with debris, as alleged in his complaint.

If the unalleged claim of water on the floor was preserved, the record does not support it. Purvey admittedly did not see a substance on the floor, before or after his fall. Tafolla did not say she saw liquid; she saw Purvey jump "pretty high" for his shot but did not see him slip. Seeing people walk around drinking water does not prove it was on the playing surface. Some 20 to 25 people shot baskets at the hoop, and no one slipped on liquid.

The cases Purvey cites are distinguishable because they involve fallen substances on floors that store owners could readily see. (*Louie v. Hagstrom's Food Stores, Inc.* (1947) 81 Cal.App.2d 601, 604 [puddle of syrup from a broken jar]; *Ahern v. S. H. Kress & Co.* (1950) 97 Cal.App.2d 691, 692 [12-inch puddle of liquid]; *Jones v. Hotchkiss* (1956) 147 Cal.App.2d 197, 202 [sawdust]; *McKenney v. Quality Foods, Inc.* (1957) 156 Cal.App.2d 349, 352 [lettuce leaf]; *Ortega v. Kmart Corp.* (2001) 26 Cal.4th 1200, 1204 [puddle of milk].) Here, by contrast, no one saw anything on the floor, even when Purvey was sitting on it after falling.

The issue is whether YMCA *unreasonably increased* the risk of a fall. No trier of fact could find YMCA unreasonably failed to promptly clean up a substance when the record shows that no one saw any such substance. If Purvey slipped on drops of sweat from the 20 to 25 other individuals shooting at the same hoop, this is an inherent risk of basketball.

Purvey pleads that YMCA committed gross negligence. (See *City of Santa Barbara v. Superior Court* (2007) 41 Cal.4th 747, 754 [gross negligence is "a ' " 'want of even scant care' " ' or ' " 'an extreme departure from the ordinary standard of

10

conduct' " ' "].)  The record shows no evidence of ordinary negligence, let alone gross negligence. [3]

## DISPOSITION

The judgment is affirmed.  The Young Men's Christian Association of Burbank, California, is entitled to its costs on appeal.

NOT TO BE PUBLISHED.


LUI, P. J.

We concur:


CHAVEZ, J.


BENKE, J.*

---

[3] We need not decide if the Waiver bars Purvey's claim.

* Retired Associate Justice of the Court of Appeal, Fourth Appellate District, Division One, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11