75 Cal.Rptr.2d 801 (1998)
64 Cal.App.4th 1112
Plaintiff and Appellant,
v.
LAS VIRGENES UNIFIED SCHOOL DISTRICT,
Defendant and Respondent.
No. B110878.
Court of Appeal, Second District. Division 6.
June 15, 1998.
Robert L. Luty, a Professional Corporation, for Appellant.
Louis R. Dumont; Carpenter & Rothans, for Las Virgenes Unified School District, Respondent.
YEGAN, Associate Justice.
Not so very long ago, a row of docile cheerleaders would say, "rah, rah, rah, sisboom-bah"maybe a leg would kick up into the air, perhaps a jump under the cheerleader's own power. This would take the cheerleader a foot or so off the ground. That, *802 however, was yesterday. Today, even appellant recognizes "... the acrobatic gymnastic nature of modern cheerleading." It is not unusual for modern cheerleaders to perform gymnastic stunts which may catapult a cheerleader many feet into the air. What goes up, must come down. This includes cheerleaders. Whenever gravity is at play with the human body, the risk of injury is inherent. While an appellate court has the power to change the law, we cannot change the law of gravity.
We sympathize with an injured cheerleader and any student injured while participating in extracurricular activities which are inherently dangerous. Such activities are, however, voluntary. There are benefits and burdens associated with such activities. Unfortunately, some students participating in such activities are injured. As we shall explain, the doctrine of primary assumption of the risk bars a cheerleader's negligence lawsuit against the school district.

Facts and Procedural History
Denning Aaris, by and through her guardian ad litem, appeals from a summary judgment granted in favor of respondent Las Virgenes Unified School District (School District). (Code Civ. Proc., § 437c, subd. (c).) Appellant, a sophomore at Agoura High School, injured her knee performing a gymnastic stunt at cheerleader practice.
Appellant injured her right knee practicing a gymnastic stunt called the "cradle." The stunt requires that two cheerleaders face each other to form a "base" and launch a third cheerleader, the flyer, into the air. After the flyer pikes, she descends toward the ground where the base cheerleaders are supposed to catch her. A fourth cheerleader acts as a spotter to assist in the catch.[1]
On November 16, 1994, the cheerleaders practiced in the wrestling room. Appellant and Lindsey Goldstein paired off to form the base and launched the flyer, Sharili Brown, into the air. Brown came down awkwardly, scratching their faces. Appellant told Coach Eileen McGrew that they were having problems cradling Brown. Coach McGrew said that they had "bad technique" and "need to keep on trying it over and over again."
The cheerleaders went outside to practice on the athletic field. Appellant felt uncomfortable performing in front of others and asked: "Do we have to do this stunt?" Coach McGrew responded: "You should be doing it every single time."
Appellant's squad tried to do the cradle. Coach McGrew stood close by to assist. Appellant and Goldstein launched Brown into the air. Brown wobbled and fell on appellant, injuring her leg.
Appellant had received stunt training while she was on the freshman high school cheerleading squad. In 1993, she participated in tryouts and made the junior varsity cheerleader team. Appellant received formal instruction in stunt technique and safety, and knew that the stunts were dangerous. Indeed, as a freshman, she injured her left knee performing a toe-touch stunt.
At the hearing on the summary judgment motion, the trial court stated: "The facts on this motion show that the plaintiff received adequate safety and technique instruction, but they do not show that the flier had received adequate safety and technique instruction." The court continued the hearing and ordered the parties to file supplemental papers.
School District filed a declaration by the flyer, Sharili Brown, stating: "I attended a four-day cheerleading camp which was held in Santa Barbara. I attended this camp with Ms. McGrew and the Cheerleading squads from our school. During the course of the camp, all of the cheerleaders, including myself, received many hours of formal instruction in safety and the use of proper technique while executing basic cheerleading stunts and maneuvers. The instruction we received included demonstration and discussion which concerned the proper technique for executing the `cradle.'"
Coach McGrew declared that the cheerleaders received formal instruction in technique and safety in performing the cradle stunt. "This instruction was provided by myself on a daily basis, as well as by outside *803 professionals who visited the school. All of this instruction was additional to that received at the Santa Barbara camp. [¶] ... In additional to the formal instruction noted above, I also provided the members of the cheerleading squads with audio-visual aids which highlighted safety and technique. I also provided each member of the cheerleading squads, including Sharili Brown, with written materials which addressed proper safety and technique...." Coach McGrew stated that "Sharih Brown was a good cheerleading student who observed all of the guidelines provided to her with regard to proper technique and safety."
The trial court granted summary judgment ruling that appellant assumed the risk of injury: "It seems clear that modern cheerleading... now incorporates elements of gymnastics and tumbling and is done in group form, with body contact. And orthopedic injuries of this type, caused by miscalculation or improper athletic form or skill of the co-participants, is an inherent risk in the sport or activity of modern cheerleading, as it is practiced in this case. [¶] ... [¶] [T]here is no triable issue of negligence here because, first of all, the instructor did not increase the inherent risk of harm in the sporting activity. It seems to me that student fears or expressed reservations about possible injuries do not constitute negligence or increased risk." The trial court ruled that the uncontroverted facts "establish that the instructor did not increase the risk of harm inherent in the activity, the participants received adequate and property training in technique and safety, and they were properly and reasonably supervised."

Primary Assumption of Risk
We review the order granting summary judgment de novo to determine whether there are any triable issues of material fact. (Allan v. Snow Summit, Inc. (1996) 51 Cal.App.4th 1358, 1365, 59 Cal.Rptr.2d 813.) The question here is one of law, i.e., whether the respondent breached a duty to protect appellant from injury when she performed the gymnastic stunt. (Knight v. Jewett (1992) 3 Cal.4th 296, 313, 11 Cal.Rptr.2d 2, 834 P.2d 696.)
In Knight, the doctrine of primary assumption of the risk barred an action against a football player who injured the plaintiff while playing a game of touch football. The Supreme Court stated that sports participants "generally have no legal duty to eliminate (or protect a plaintiff against) risks inherent in the sport itself...." (Id., at p. 315, 11 Cal.Rptr.2d 2, 834 P.2d 696.) In a sports setting, "the existence and scope of a defendant's duty of care is a legal question which depends on the nature of the sport or activity in question and on the parties' general relationship to the activity, and is an issue to be decided by the court, rather than the jury. [Citation.]" (Id. at p. 313, 11 Cal. Rptr.2d 2, 834 P.2d 696.)
Appellant argues that doctrine of primary assumption of risk does not apply where the negligence action is brought against the instructor or coach, as opposed to the sports coparticipant. We disagree. "An instructor is not an insurer of the student's safety. [Citation.]" (Balthazor v. Little League Baseball, Inc. (1998) 62 Cal.App.4th 47, 50, 72 Cal.Rptr.2d 337.) Appellant's reliance on Galardi v. Seahorse Riding Club (1993) 16 Cal.App.4th 817, 20 Cal.Rptr.2d 270, Tan v. Goddard (1993) 13 Cal.App.4th 1528, 17 Cal. Rptr.2d 89, and Wattenbarger v. Cincinnati Reds, Inc. (1994) 28 Cal.App.4th 746, 33 Cal. Rptr.2d 732 is misplaced. In each those cases, the instructor/coach gave specific directions which increased the risk of harm to the student over and above that inherent in the sport.
Galardi v. Seahorse Riding Club, supra, 16 Cal.App.4th 817, 20 Cal.Rptr.2d 270 (Galardi), illustrates the principle. There the riding instructor raised the height of the jumps without lengthening the distance between each jump. (Id., at p. 820, 20 Cal. Rptr.2d 270.) The student was directed to run the course backwards and missed the second jump, sustaining serious injuries. (Id., at p. 820, 20 Cal.Rptr.2d 270.) The Court of Appeal held that the doctrine of primary assumption of the risk did not apply because the instructor "negligently deployed the jumps at unsafe heights or intervals...." (Id., at p. 823,20 Cal.Rptr.2d 270.)
In Tan v. Goddard, supra, 13 Cal.App.4th 1528, 17 Cal.Rptr.2d 89 (Tan), a student jockey was instructed to ride a lame horse in the wrong direction on an unsafe track. The *804 Court of Appeal held that the instructor breached a care "to see to it that the horse he assigned Tan to ride was safe to ride under the conditions he prescribed for that activity." (Id., at p. 1535,17 Cal.Rptr.2d 89.)
Similarly, in Wattenbarger v. Cincinnati Reds, Inc., supra, 28 Cal.App.4th 746, 33 Cal.Rptr.2d 732 (Wattenbarger), a 17-yearold pitcher injured his arm during baseball tryouts. The plaintiff continued pitching after he reported a "pop" in his arm. (Id., at p. 750, 33 Cal.Rptr.2d 732.) Wattenbarger, Tan, and Galardi "stand for the proposition that when an instructor acts so as to increase the risk of harm inherent in a particular sport, the instructor may not thereafter rely on primary assumption of the risk." (Fortier v. Los Rios Community College Dist. (1996) 45 Cal.App.4th 430, 436, 52 Cal.Rptr.2d 812.)
The record shows that Coach McGrew did not increase the risk of harm inherent in the gymnastic stunt. The cheerleaders were told to practice and develop their technique. There was no evidence that Coach McGrew took the team beyond its level of experience and capability and the action is barred by the doctrine of primary assumption of the risk. (E.g., Regents of University of California v. Superior Court (1996) 41 Cal.App.4th 1040, 1046,48 Cal.Rptr.2d 922.)

Education Code section H807
Appellant contends that School District breached a statutory duty to supervise the stunt team. Education Code section 44807 provides in pertinent part: "Every teacher in the public schools shall hold pupils to a strict account for their conduct on the... playgrounds, or during recess."
The statutory duty is breached where a child is injured in a clod fight during school recess (Lucas v. Fresno Unified School Dist (1993) 14 Cal.App.4th 866, 872-873, 18 Cal. Rptr.2d 79) or where a high school student is injured in an unsupervised slap boxing match (Dailey v. Los Angeles Unified Sch. Dist. (1970) 2 Cal.3d 741, 747, 87 Cal.Rptr. 376, 470 P.2d 360.) "While school districts and their employees have never been considered insurers of the physical safety of students, California law has long imposed on school authorities a duty to `supervise at all times the conduct of the children on the school grounds and to enforce those rules and regulations necessary to their protection. [Citations.]'... Either a total lack of supervision [citation] or ineffective supervision [citation] may constitute a lack of ordinary care on the part of those responsible for student supervision." (Ibid.)
Here the sports injury occurred on school grounds, during school hours, while Coach McGrew was supervising and training the cheerleaders. The trial court reasonably ruled that there were no triable facts that Coach McGrew failed to properly supervise appellant and her teammates. Education Code section 44807 does not "trump" the doctrine of primary assumption of risk where a high school cheerleader participates in cheerleading stunts as a class elective activity and the activity is supervised by an experienced coach.
Appellant maintains that Coach McGrew owed a greater duty of care because some of the cheerleaders had not mastered the cradle stunt. The argument lacks merit and assumes that more supervision would have reduced the risk of harm. Coach McGrew was not an insurer of appellant's physical safety. (Balthazor v. Little League Baseball, Inc., supra, 62 Cal.App.4th at p. 50, 72 Cal. Rptr.2d 337; Bushnell v. Japanese-American Religious & Cultural Center (1996) 43 Cal.App.4th 525, 532, 50 Cal.Rptr.2d 671.) "Absent evidence of recklessness, or other risk-increasing conduct, liability should not be imposed simply because an instructor asked the student to take action beyond what, with hindsight, is found to have been the student's abilities. To hold otherwise would discourage instructors from requiring students to stretch, and thus to learn, and would have a generally deleterious effect on the sport as a whole." (Ibid.)
We conclude that the gymnastic activity, i.e., the cradle stunt, created the risk of harm. (Knight v. Jewett, supra, 3 Cal.4th at p. 309, 11 Cal.Rptr.2d 2, 834 P.2d 696.) Appellant knew that the stunt was dangerous and practiced the cradle stunt "for several months" before the injury. There are no triable facts that respondent increased the risk of harm beyond that which was inherent in the gymnastic activity. (Bushnell v. Japanese-American *805 Religious & Cultural Center, supra, 43 Cal.App.4th at p. 532, 50 Cal. Rptr.2d 671.) "[T]he mere existence of an instructor/pupil relationship does not necessarily preclude application of `primary assumption of the risk.' Learning any sport inevitably involves attempting new skills. A coach or instructor will often urge the student to go beyond what the student has already mastered; that is the nature of (inherent in) sports instruction." (Allan v. Snow Summit, Inc. supra, 51 Cal.App.4th 1358,1368-1369,59 Cal.Rptr.2d 813.)
Appellant argues that she was subject to peer pressure and would have been thrown off the cheerleader team if she did not perform the stunt. No evidence was presented to support this claim. Appellant practiced with the same team on a regular basis and assumed the risk that some of her teammates had not perfected the stunt.
Appellant opines that Coach McGrew could have reduced the risk of harm by instructing the stunt team to use a different flyer. The argument is without merit. "Under primary assumption of risk, the defendant has a duty not to increase the risks inherent in the sport, not a duty to decrease the risks." (Balthazor v. Little League Baseball, Inc., supra, 62 Cal.App.4th 47, 52, 72 Cal.Rptr.2d 337 [11-year old little leaguer assumed risk of being struck by wild pitch].)
Were we to hold that respondent has liability for appellant's injury, it would fundamentally alter the nature of high school cheerleading, perhaps heralding the return of that docile row of cheerleaders. School districts would be strictly liable for injuries occurring in this extra-curricular athletic activity. This would either chill, or perhaps even kill, high school cheerleading.

Release
The trial court also granted summary judgment on the ground that the action was barred by a waiver of liability executed by appellant's mother. It did not err. The "Activity Certificate" states: "I hereby give my consent for the above named student to compete in the Las Virgenes High School approved activity program ... and travel with the school representative on authorized school trips. I, the undersigned, hereby release and discharge the Las Virgenes Unified School District, officers, employers, agents, servants and volunteers (herein collectively referred to as `District') from all liability arising out of or in connection with the above described activity or all liabilities associated with any and all claims related to such activity that may be filed on behalf of or for the above named minor. For the purposes of this agreement, liability means all claims, demands, losses, causes of action, suits or judgments of any and every kind ... that occurs during the above described activity and that results from any cause other than the negligence of the District."
It is well established that a parent may execute a release on behalf of his or her child. (Hohe v. San Diego Unified Sch. Dist. (1990) 224 Cal.App.3d 1559, 1565, 274 Cal. Rptr. 647.) The trial court correctly ruled that the release barred recovery because there were no triable facts that defendant was negligent. The doctrine of primary assumption of the risk embodies the legal conclusion that defendant owed no duty to protect appellant from the risk of harm inherent in the athletic activity. (Knight v. Jewett, supra, 3 Cal.4th 296, 309, 11 Cal.Rptr.2d 2, 834 P.2d 696.) There being no duty, there was no negligence.
The judgment is affirmed. Costs to respondent.
GILBERT, Acting P.J., and COFFEE, J., concur.
NOTES
[1] Even this brief description demonstrates the obvious: being a modern cheerleader requires team work, athletic skill, physical strength, and the courage to attempt a potentially dangerous gymnastic stunt.