Filed 3/23/15  Baggay v. Linfield Christian School CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| RACHEL BAGGAY, a Minor, etc. | D066859 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. RIC1111543) |
| LINFIELD CHRISTIAN SCHOOL, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Riverside County, Ronald L. Taylor, Judge.  Affirmed.

Alderlaw, P.C. and Jennifer P. Burkes for Plaintiff and Appellant.

Daley & Heft and Lee H. Roistacher for Defendant and Respondent.


I.

INTRODUCTION

Rachel Baggay sued Linfield Christian School (Linfield) for injuries that she sustained while participating in a gymnastic stunt during a high school cheerleading

practice. She appeals from a judgment entered in favor of Linfield after the trial court granted Linfield's motion for summary judgment on Baggay's first amended complaint,[1] in which she alleged causes of action for negligence, false promise, and negligent misrepresentation. Baggay contends that the court erred in ruling that her claims are barred by the doctrine of primary assumption of the risk. She additionally contends that there are triable issues of fact that preclude summary adjudication of her causes of action for false promise and negligent misrepresentation. We affirm.

II.

FACTUAL AND PROCEDURAL BACKGROUND

Baggay started cheering in eighth grade at Calvary Murrieta Christian School (Calvary), where she was one of two cheer captains. She testified in her deposition that during her cheering practices at Calvary, she and other members of her "stunt team" spent 30 to 45 minutes of each practice working on stunts. She was first taught to perform cheerleading stunts at a week-long summer cheer camp that she attended with her eighth grade cheerleading teammates.

At the end of her eighth grade year, Baggay decided that she wanted to try out for the cheerleading team at Linfield, where she would be a high school freshman the next

_____

1      The judgment states that the court "granted summary judgment for [Linfield] as to Plaintiff Rachel Baggay (Plaintiff')'s Complaint," and Linfield's summary judgment motion does not identify Baggay's operative pleading by title. However, the only pleading in the record is a copy of Baggay's first amended complaint, which is attached as an exhibit to defense counsel's declaration in support of the motion for summary judgment. The record also includes the Register of Actions for the case, which shows that the operative pleading was the first amended complaint.

school year. She had missed the tryouts, which were held in May, but the coaches allowed her to try out at the team's first practice at the beginning of June, and she made the team. During the summer before her freshman year, Baggay and her teammates attended a week-long high school-level cheer camp held by the Universal Cheerleaders Association at San Diego State University. She was assigned to a stunting group as a "base"[2] on her second day of camp, and spent 45 minutes each day learning various stunts with her group.

Baggay and her stunt group continued to practice stunts two to three times a week during cheer practices between the summer cheer camp and the beginning of Baggay's ninth grade school year. Around that time, Baggay also received private instruction in stunting from a competitive cheerleading group that "had a lot of professionals that had been doing cheer for years." Those instructors told Baggay that stunting was dangerous and that she "might get hurt while stunting." She continued to learn and practice stunting during her ninth grade year.

In May of her ninth grade year (2010), Baggay tried out for and made the cheerleading team for her sophomore year. Her coaches initially were Kelly Braden and Katie Enlow. Braden had been a cheerleader at Linfield during all four years that she

---

[2]     A cheerleading stunt group generally includes two "bases" who are positioned on the ground on opposite sides of a "flyer," the cheerleader whom the bases lift and support, and sometimes throw into the air and catch when she comes down. The stunt group also includes a "back spot" who provides additional support for the flyer from behind, assists in catching the flyer, and gives an audible count to cue a stunt. A front spotter is also used for some stunts.

attended the school, and Enlow was a competitive cheerleader at the college she was attending. Enlow quit coaching the Linfield team in August and was replaced by Jessica Shaw, who was a gymnastics instructor and had been a competitive cheerleader for several years.

During the summer before her sophomore year, Baggay practiced with the cheerleading team Monday through Friday for two and a half hours per day. During a cheer camp that summer, Enlow taught Baggay and her stunt group to perform an "extension lib," which is short for "extension liberty."[3] After school started, the cheerleading team practiced Monday through Thursday for about two and a half hours a day. Baggay was in the advanced stunting group, which was more experienced than the other groups. In mid-September 2010, Shaw taught Baggay's stunt group to perform a full down cradle dismount from an extension.[4] After learning that stunt, Baggay's team practiced it eight times per week. Her group also practiced other advanced stunts between mid-September and October 20, the date Baggay was injured. They successfully performed an extension lib full down about five times.

---

[3] An extension lib is a stunt in which the bases and back spot support the flyer over their heads with their arms fully extended and locked, while the flyer stands on one leg (the dominant leg) and raises her other leg, and places the foot of her raised leg against the knee of her dominant leg.

[4] Baggay explained that a full down cradle dismount is "like a cradle. However, when we throw the flyer up in the air, we throw her a little higher up so that she gets momentum, and then she does a twirl [i.e., a spin or full twist] in the air, then lands back down in our arms." In cheerleading parlance, an extension lib with a full down cradle dismount is generally referred to simply as an "extension lib full down."

On the day of Baggay's injury, the coaches (Braden and Shaw) told the cheerleading team that it was going to be enrolled in a competition and they wanted the team to focus on stunts. Baggay's stunt group warmed up by performing the easiest stunts first and then successfully performing increasingly difficult stunts, including an extension, an extension cradle, and an extension full down. After Baggay's stunt group finished their warm-up stunts, the coaches watched them successfully repeat the extension full down. The coaches then asked the group to try an extension lib. After Baggay's group successfully performed the extension lib two or three times, the coaches asked them to add a full down dismount because they wanted the group to do an extension lib full down at the coming homecoming game. Baggay's group performed the extension lib full down successfully and then tried a stunt known as an arabesque.[5] However, the arabesque was "a little wobbly," so the coaches told Baggay's group to continue practicing the extension lib full down. While the group was practicing an extension lib full down, the flyer came down too far to the right and fell on Baggay. Her elbow hit Baggay between the eyes, causing a concussion.

Baggay filed a first amended complaint against Linfield that includes a first cause of action for negligence entitled "Negligence/Recklessness," a second cause of action for promissory fraud (entitled "False Promise"), and a third cause of action for negligent misrepresentation. Linfield filed a motion for summary judgment or, in the alternative,

---

[5]     Baggay explained that an arabesque is similar to an extension lib except that the flyer's non-dominant leg is extended behind her.

5

summary adjudication, on the grounds that primary assumption of the risk barred Baggay's recovery for injuries that she received during her voluntary participation in cheerleading, and that she could not establish essential elements of her causes of action for false promise and negligent misrepresentation.

The trial court granted Linfield's motion for summary judgment on the entire first amended complaint on the ground that "the primary assumption of [the] risk doctrine bars [Baggay's] claim." The court subsequently entered judgment in favor of Linfield. The court did not address any specific cause of action in either the summary judgment order or judgment.

III.

DISCUSSION

A.    *Standard of Review*

A motion for summary judgment or adjudication must be granted when there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) "A defendant 'moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact.' [Citation.] A defendant may meet this burden either by showing that one or more elements of a cause of action cannot be established or by showing that there is a complete defense. [Citation.] . . . 'A defendant moving for summary judgment may establish that an essential element of the plaintiff's cause of action is absent by reliance on the pleadings, competent declarations, binding judicial

6

admissions contained in the allegations of the plaintiff's complaint, responses or failures to respond to discovery, and the testimony of witnesses at noticed depositions.' [Citation.]" (*Mills v. U.S. Bank* (2008) 166 Cal.App.4th 871, 894 (*Mills*).)

> "If the defendant's prima facie case is met, the burden shifts to the plaintiff to show the existence of a triable issue of material fact with respect to that cause of action or defense. [Citations.] ' "When opposition to a motion for summary judgment is based on inferences, those inferences must be reasonably deducible from the evidence, and not such as are derived from speculation, conjecture, imagination, or guesswork." ' [Citation.] [¶] Ultimately, the moving party 'bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law.' [Citation.]
>
> "We review a summary judgment or summary adjudication ruling de novo to determine whether there is a triable issue as to any material fact and whether the moving party is entitled to judgment as a matter of law. [Citation.] 'In practical effect, we assume the role of a trial court and apply the same rules and standards which govern a trial court's determination of a motion for summary judgment.' [Citation.] '[W]e are not bound by the trial court's stated reasons for its ruling on the motion; we review only the trial court's ruling and not its rationale.' [Citation.]" (*Mills, supra,* 166 Cal.App.4th at pp. 894-895.)

B.   *Primary Assumption of the Risk*

Baggay contends that the trial court erred in ruling that her claims are barred by the doctrine of primary assumption of the risk. "California's assumption of risk doctrine has taken two quite different forms. Primary assumption of risk is a complete bar to recovery. It applies when, as a matter of law, the defendant owes no duty to guard against a particular risk of harm. Secondary assumption of risk applies when the defendant does owe a duty, but the plaintiff has knowingly encountered a risk of injury

7

caused by the defendant's breach.  Liability in such cases is adjudicated under the rules of comparative negligence."  (*Gregory v. Cott* (2014) 59 Cal.4th 996, 1001.)

"Applied in the sporting context, [primary assumption of the risk] precludes liability for injuries arising from those risks deemed inherent in a sport; as a matter of law, others have no legal duty to eliminate those risks or otherwise protect a sports participant from them.  [Citation.]  Under this duty approach, a court need not ask what risks a particular plaintiff subjectively knew of and chose to encounter, but instead must evaluate the fundamental nature of the sport and the defendant's role in or relationship to that sport in order to determine whether the defendant owes a duty to protect a plaintiff from the particular risk of harm."  (*Avila v. Citrus Community College Dist.* (2006) 38 Cal.4th 148, 161.)

The California Supreme Court has "concluded that, in recognition of the circumstance that some risk of injury is inherent in most sports, and in order to avoid the detriment to a sport that would arise from discouraging participants from vigorously engaging in the activity, it is appropriate to hold that a participant breaches a duty of care to a coparticipant only if he or she 'intentionally injures another player or engages in conduct that is so reckless as to be totally outside the range of the ordinary activity involved in the sport.' "  (*Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 995-996 (*Kahn*), quoting *Knight v. Jewett* (1992) 3 Cal.4th 296, 320 (*Knight*).)  In *Kahn,* the Supreme Court held that "the same general standard should apply in cases in which an instructor's alleged liability rests primarily on a claim that he or she challenged

8

the player to perform beyond his or her capacity or failed to provide adequate instruction or supervision before directing or permitting a student to perform a particular maneuver that has resulted in injury to the student. A sports instructor may be found to have breached a duty of care to a student or athlete only if the instructor intentionally injures the student or engages in conduct that is reckless in the sense that it is 'totally outside the range of the ordinary activity' [citation] involved in teaching or coaching the sport." (*Kahn, supra,* at p. 996.)

Applying this standard in the present case, we conclude that the doctrine of primary assumption of the risk bars Baggay's negligence claim. In *Aaris v. Las Virgenes Unified School Dist.* (1998) 64 Cal.App.4th 1112 (*Aaris*), the Court of Appeal applied the doctrine of primary assumption of the risk to modern high school cheerleading, which the *Aaris* court noted has become a sporting activity that includes acrobatics and gymnastics and, consequently, involves a much greater risk of injury than it did in the past.[6] (*Id.* at pp. 1114-1115.) The plaintiff in *Aaris* was a high school cheerleader who sued her school district for a knee injury that she sustained as a base on a stunt group when she

---

[6]    The *Aaris* court stated: "Not so very long ago, a row of docile cheerleaders would say, 'rah, rah, rah, sis-boom-bah'—maybe a leg would kick up into the air, perhaps a jump under the cheerleader's own power. This would take the cheerleader a foot or so off the ground. That, however, was yesterday. Today, even appellant recognizes ' . . . the acrobatic gymnastic nature of modern cheerleading.' It is not unusual for modern cheerleaders to perform gymnastic stunts which may catapult a cheerleader many feet into the air. What goes up, must come down. This includes cheerleaders. Whenever gravity is at play with the human body, the risk of injury is inherent. While an appellate court has the power to change the law, we cannot change the law of gravity." (*Aaris*, *supra*, 64 Cal.App.4th at pp. 1114-1115.)

and other group members attempted to catch a flyer in a cradle and the flyer fell on her. (*Id.* at p. 1115.)

The *Aaris* court concluded that the doctrine of primary assumption of the risk barred the plaintiff's negligence action against the school district. (*Aaris, supra,* 64 Cal.App.4th at p. 1115.) The court rejected the plaintiff's contention that the doctrine of primary assumption of the risk does not apply to a negligence action against an instructor or coach, as opposed to a coparticipant in a sporting activity, reasoning that " '[a]n instructor is not an insurer of the student's safety.' " (*Id.* at p. 1117.) The *Aaris* court concluded that the action was barred by the doctrine of primary assumption of the risk because there was no evidence that the plaintiff's coach increased the risk of harm inherent in the subject gymnastic stunt or took the team beyond its level of experience and capability. (*Id.* at p. 1118.)

The plaintiff in *Aaris* contended that the coach owed a greater duty of care because some of the cheerleaders had not mastered the cradle stunt. (*Aaris, supra,* 64 Cal.App.4th at p. 1119.) The *Aaris* court concluded that this contention lacked merit because it "assume[d] that more supervision would have reduced the risk of harm." (*Ibid.*) The court reiterated that the plaintiff's coach was "not an insurer of her physical safety," and stated, " 'Absent evidence of recklessness, or other risk-increasing conduct, liability should not be imposed simply because an instructor asked the student to take action beyond what, with hindsight, is found to have been the student's abilities. To hold otherwise would discourage instructors from requiring students to stretch, and thus to

10

learn, and would have a generally deleterious effect on the sport as a whole.' " (*Ibid.*, quoting *Bushnell v. Japanese-American Religious & Cultural Center* (1996) 43 Cal.App.4th 525, 532.)

The California Supreme Court in *Kahn* quoted the same passage with approval and emphasized with italics the point that " '*[a]bsent evidence of recklessness, or other risk-increasing conduct, liability should not be imposed simply because an instructor asked the student to take action beyond what, with hindsight, is found to have been the student's abilities.*' [Citation.]" (*Kahn, supra,* 31 Cal.4th at p. 1007.) The *Kahn* court explained that "the object to be served by the doctrine of primary assumption of risk in the sports setting is to avoid recognizing a duty of care when to do so would tend to alter the nature of an active sport or chill vigorous participation in the activity. This concern applies to the process of learning to become competent or competitive in such a sport. Novices and children need instruction if they are to participate and compete, and we agree with the many Court of Appeal decisions that have refused to define a duty of care in terms that would inhibit adequate instruction and learning or eventually alter the nature of the sport. Accordingly, we believe that the standard set forth in *Knight, supra,* 3 Cal.4th 296, as it applies to coparticipants, generally should apply to sports instructors, keeping in mind, of course, that different facts are of significance in each setting. In order to support a cause of action in cases in which it is alleged that a sports instructor has required a student to perform beyond the student's capacity or without providing adequate instruction, it must be alleged and proved that the instructor acted with intent to cause a student's injury or

11

that the instructor acted recklessly in the sense that the instructor's conduct was 'totally outside the range of the ordinary activity.' " (*Kahn, supra,* at p. 1011.)

Baggay does not claim that her coaches acted with the intent to cause her injury, and there is no evidence in the record from which a trier of fact could reasonably find that her coaches acted recklessly in the sense of engaging in conduct that is totally outside the range of the ordinary activity involved in coaching modern cheerleading. The risk of harm to Baggay and the other members of her stunt group in attempting to execute an extension lib full down is inherent in the stunt itself; there is no evidence that Baggay's coaches, in the words of the *Aaris* court, "increased the risk of harm beyond that which was inherent in the gymnastic activity." (*Aaris, supra,* 64 Cal.App.4th at p. 1119.)

Baggay argues that her claims are not barred by primary assumption of the risk because a concussion is not an inherent risk of cheerleading. We disagree. In the context of assumption of the risk, " '[i]nherent risk' does not refer to the *type* of injury that the plaintiff sustains or the manner in which the injury occurred, but rather the *reason* for the injury." (*Stapper v. GMI Holdings, Inc.* (1999) 73 Cal.App.4th 787, 794, italics added.) "An inherent risk is one that, if eliminated, would fundamentally alter the nature of the sport or deter vigorous participation." (*Ford v. Polaris Industries, Inc.* (2006) 139 Cal.App.4th 755, 772.)

The reason for Baggay's injury was that the flyer in her stunt group fell because the group failed to properly execute a cheerleading stunt that they had previously practiced and successfully executed multiple times. It is part of the fundamental nature

12

of modern cheerleading that stunt groups will practice and perform acrobatic stunts that involve an obvious risk of injury to the flyer and to other group members if something goes wrong during a stunt. To eliminate the risk that a flyer might fall while practicing a stunt would fundamentally alter the nature of cheerleading and deter vigorous participation in the sport. Thus, *any* type injury that reasonably could be expected to result from such a fall is an inherent risk of modern cheerleading. The concussion that Baggay suffered was no less a foreseeable cheerleading injury than the knee injury that the plaintiff in *Aaris* suffered.

Baggay contends that Linfield increased the inherent risks of cheerleading by failing to provide adequate instruction in technique and safety, directing the group to practice a stunt that was beyond their level of experience and capability, failing to provide adequate spotting for the stunt, and allowing her group to attempt an advanced stunt that they lacked the necessary strength and conditioning to perform.[7] Even if these alleged acts and omissions by the coaches did occur and increased the risk of injury, they would not defeat the defense of primary assumption of the risk because, at most, they constitute ordinary negligence rather than *reckless* conduct that is totally outside the range of the ordinary activity involved in coaching cheerleading. (*Kahn, supra,* 31

---

[7]     Baggay also suggests that the coaches increased the risk of harm because one of them watched the stunt that resulted in Baggay's injury from nine feet away and the other was assisting another stunt group at the time the accident occurred. There is no basis, however, to conclude that the accident would not have occurred if a coach had been observing Baggay's stunt group from a closer distance.

13

Cal.4th at p. 996.) As noted, to support a cause of action based on allegations that a sports instructor failed to provide adequate instruction or required a student plaintiff to perform beyond his or her capacity, it is insufficient to show that the instructor was negligent; the plaintiff must prove that the instructor intended to cause the plaintiff's injury or acted recklessly. (*Id.* at pp. 996, 1011.) " 'Any other rule would discourage instructors from asking their students to do anything more than they have done in the past, and would therefore have a chilling effect on instruction, and thus would have a negative impact on the very purpose for seeking instruction: mastering the activity.' [Citation.]" (*Id.* at p. 1008.) The trial court properly ruled that Baggay's negligence claim is barred by primary assumption of the risk.[8]

C. *Causes of Action for False Promise and Negligent Misrepresentation*

Baggay contends that there are triable issues of fact that preclude summary adjudication of her causes of action for false promise and negligent misrepresentation. We conclude, as the trial court implicitly ruled, that the doctrine of primary assumption of the risk also bars these causes of action.

---

[8] Baggay's opposition to Linfield's summary judgment motion includes a declaration from a cheerleading expert, and a declaration from an expert in school safety and supervision. Both declarations charge Linfield with inadequate training and supervision of Baggay's stunt group. The school safety expert additionally opined that Linfield increased the risk of harm inherent in cheerleading by failing to properly hire coaches and failing to have a policy of investigating accidents that result in a concussion to a student. Neither declaration describes reckless conduct that is totally outside the range of the ordinary activity involved in coaching cheerleading. At oral argument on the motion, the court informed the parties that it had considered the expert declarations and concluded that they were "not persuasive as to the coaches increasing [the] risk."

The Supreme Court in *Kahn* stated that "[i]n order to support *a cause of action in cases in which it is alleged that a sports instructor has required a student to perform beyond the student's capacity or without providing adequate instruction*, it must be alleged and proved that the instructor acted with intent to cause a student's injury or that the instructor acted recklessly in the sense that the instructor's conduct was 'totally outside the range of the ordinary activity.' [Citation.]" (*Kahn, supra,* 31 Cal.4th at p. 1011, italics added.) As the italicized language indicates, the doctrine of primary assumption of the risk applies to *any* cause of action that is based on allegations that a sports instructor required a student plaintiff to perform beyond his or her capacity or without providing adequate instruction. A plaintiff cannot avoid application of the doctrine by attempting to plead a negligence claim as a cause of action for negligent misrepresentation or promissory fraud.

Baggay's "false promise" and negligent misrepresentation causes of action are both based on Linfield's alleged failure to provide her adequate instruction. In her promissory fraud cause of action, Baggay alleged that Linfield promised her that "its students would be instructed in proper techniques to be used in athletic competitions." Similarly, Baggay alleged in her negligent misrepresentation cause of action that Linfield "represented to [Baggay] that . . . its students would be instructed in proper techniques to be used in athletic competition." She did not allege in either cause of action, or present evidence in opposition to Linfield's summary judgment motion, that her coaches acted with the intent to cause her injury or engaged in conduct that was reckless in the sense of being totally

15

outside the range of the ordinary activity involved in coaching cheerleading.  (*Kahn,*

*supra,* 31 Cal.4th at p. 1011.)  The doctrine of primary assumption of the risk therefore

bars her causes of action for false promise and negligent misrepresentation.

DISPOSITION

The judgment is affirmed.  Respondent is awarded its costs on appeal.


AARON, J.

WE CONCUR:


McCONNELL, P. J.


McINTYRE, J.

16