Filed 1/17/23  C.D. v. BNI Treatment Centers CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| C.D., a Minor, etc., | B313195 |
| Plaintiff and Respondent, | |
| v. | (Los Angeles County Super. Ct. No. 20SMCV00941) |
| BNI TREATMENT CENTERS, LLC, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, H. Jay Ford III, Judge.  Affirmed.

Qureshi Law and Omar G. Qureshi for Plaintiff and Respondent.

Hester Law Group, Cecille L. Hester, and Barbara M. Reardon, for Defendant and Appellant.

Plaintiff C.D. (plaintiff) was a minor when he entered a residential facility operated by defendant BNI Treatment Centers, LLC (defendant) for treatment relating to autism spectrum disorder. Plaintiff later sued defendant, and defendant sought to compel arbitration pursuant to an agreement that plaintiff's father, Joshua Deighton (Father), signed as plaintiff's legal representative or agent. In this appeal from the trial court's denial of defendant's motion to compel arbitration, we are asked to decide whether plaintiff validly repudiated the arbitration agreement pursuant to a provision of the family code that states "a contract of a minor may be disaffirmed by the minor before majority or within a reasonable time afterwards," except as otherwise provided by statute. (Fam. Code,[1] § 6710.)

## I. BACKGROUND

Plaintiff's initial complaint against defendant alleges that in 2019, while a minor, he required care in a residential facility with "staff who were specially trained and had expertise in stabilizing children with Autism." The complaint generally alleges defendant falsely represented it was equipped to provide such care and subjected him to abuse that caused his condition to worsen. The specific causes of action alleged in the initial complaint included claims for breach of contract and breach of the implied covenant of good faith and fair dealing.

Defendant moved to compel arbitration pursuant to an arbitration agreement Father signed (the Agreement). For purposes of this appeal, there is no dispute as to the scope of the

---

[1] Undesignated statutory references that follow are to the Family Code.

Agreement. The central issue is whether plaintiff was a principal to the Agreement or a third-party beneficiary thereof, which, as we shall discuss, turns on the Agreement's first sentence: "This . . . Agreement is executed between BNI Treatment Centers . . . and [Father] ('Minor' or 'Minor's Legal Representative' and/or 'Agent') in conjunction with the Minor's admission to BNI and relating to the provision of therapy/counseling services and other professional services by BNI to Minor."

After defendant moved to compel arbitration, plaintiff filed a first amended complaint that (among other differences from the original pleading) expressly disaffirmed his contract for treatment with defendant and omitted the cause of action for breach of contract.[2] The disaffirmation was made pursuant to the aforementioned provision of the Family Code, section 6710.

Defendant amended its motion to compel arbitration to account for the filing of the first amended complaint. Defendant argued the complaint should still be compelled to arbitration for the same reasons set forth in its original motion.

In his opposition to defendant's motion, plaintiff argued he was entitled to disaffirm the Agreement and included a declaration so disaffirming it (in case a declaration was seen as

_____

[2]     The operative first amended complaint asserts causes of action for violation of the CLRA; violation of the FAL; violation of the UCL; constructive fraud; intentional misrepresentation; unjust enrichment; negligent supervision, hiring, retention, and training; violation of the Bane Act (Civ. Code, § 52.1); violation of the Ralph Act (Civ. Code, § 51.7); violation of the Unruh Act (Civ. Code, § 51 et seq.); intentional infliction of emotional distress; and negligence.

3

necessary).  Plaintiff also argued there were no pertinent statutory exceptions that would prevent him from disaffirming the Agreement, including Code of Civil Procedure section 1295 (Section 1295), which bars disaffirming certain agreements with licensed health care providers (as therein defined).[3]

In reply, defendant contended a minor may only disaffirm a contract that the child personally signed—i.e., not one signed by a parent on the child's behalf.

The trial court held a hearing on defendant's motion to compel arbitration in March 2021.  The court advised the parties of its tentative conclusion that plaintiff was entitled to disaffirm the Agreement because Father "signed the [A]greement as [plaintiff's] agent or legal representative" and plaintiff "was therefore the principal in the [A]greement, not merely a third-party beneficiary."  The court also expressed surprise that defendant's reply brief did not discuss whether defendant qualifies as a licensed health care provider under Section 1295.  When defendant's attorney asserted the Section 1295 exception to disaffirmance did apply, the trial court continued the hearing to permit supplemental briefing on the applicability of Section 1295 and the issue of whether plaintiff was a principal or third-party beneficiary of the Agreement.

---

[3]     Subdivision (d) of the statute provides:  "Where the contract is one for medical services to a minor, it shall not be subject to disaffirmance if signed by the minor's parent or legal guardian."  Subdivision (g) of the statute defines "health care provider" (which is used interchangeably in the statute with references to "medical services"—a point we will return to later in greater detail) to mean "any clinic, health dispensary, or health facility licensed pursuant to" a division of the Health and Safety Code.

4

After receiving supplemental briefing—in which defendant focused on the nature of the treatment provided and again did not discuss whether defendant qualifies as a health care provider as defined in Section 1295—the trial court denied the motion to compel arbitration. The court found defendant "still fail[ed] to establish [plaintiff] was not the principal of the arbitration agreement" and "fail[ed] to demonstrate that it is a health care provider" for purposes of Section 1295.

## II. DISCUSSION

To reiterate, section 6710 states that "[e]xcept as otherwise provided by statute, a contract of a minor may be disaffirmed by the minor before majority or within a reasonable time afterwards . . . ." The Agreement's first sentence establishes the trial court correctly found the Agreement is "a contract of a minor" (i.e., that plaintiff was the principal not a third party beneficiary): Father signed in his capacity as plaintiff's representative or agent, not in his own right. The trial court also correctly concluded the Section 1295, subdivision (d) exemption for licensed health care providers from the general right of disaffirmation did not apply, largely because defendant made no attempt to establish it is a health care provider for purposes of that statute.

### A. Legal Framework
#### 1. Burdens of proof and standard of review

Although both federal and state law strongly favor arbitration and establish a presumption in favor of arbitrability, generally applicable contract defenses may be applied without contravening the Federal Arbitration Act (9 U.S.C. § 1 et seq.) or

5

the California Arbitration Act (Code Civ. Proc., § 1280 et seq.). (*OTO, LLC v. Kho* (2019) 8 Cal.5th 111, 125 (*OTO*).)  The trial court determines whether an agreement to arbitrate exists and, if any defense to its enforcement is raised, whether the agreement is enforceable.  (*Rogers v. Roseville SH, LLC* (2022) 75 Cal.App.5th 1065, 1072, citing *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413.)[4]  Where a party opposing a petition to compel arbitration establishes an otherwise applicable contract defense, the party seeking to compel arbitration has the burden to prove any exception to that defense applies.  (*Swain v. LaserAway Medical Group, Inc.* (2020) 57 Cal.App.5th 59, 76.)  Our review on appeal is de novo.  (*OTO, supra*, at 126.)

### 2. *Section 6710*

Disaffirmance of a contract pursuant to section 6710 is a defense to a motion to compel arbitration.  (*Coughenour v. Del Taco, LLC*. (2020) 57 Cal.App.5th 740, 747-748, 751 (*Coughenour*).)

---

[4]   Defendant contends, for the first time on appeal, that a delegation clause in the Agreement deprived the trial court of jurisdiction to determine whether plaintiff disaffirmed the Agreement.  Defendant forfeited this issue by not raising it in the trial court.  (*Mendoza v. Trans Valley Transport* (2022) 75 Cal.App.5th 748, 770 [delegation issue forfeited where moving party raised it for the first time "in a cursory manner" in reply papers in trial court].)  Defendant also waived its right to arbitrate questions of arbitrability by "fully litigat[ing] the very issue that [it] now argue[s] was delegated to the arbitrator . . . ."  (*Id.* at 771.)

6

As we have already seen, a minor's right to disaffirm a contract is also subject to statutory exceptions. (§ 6711 ["A minor cannot disaffirm an obligation, otherwise valid, entered into by the minor under the express authority or direction of a statute"].) The exceptions are varied and include, for example, certain contracts for necessaries (§ 6712) and certain entertainment and athletic contracts (§§ 6750-6751). The Family Code also exempts contracts for specific categories of medical treatment from disaffirmance (§ 6921), ranging from those relating to the prevention or treatment of pregnancy (§ 6925) to certain contracts for mental health treatment or counseling (§ 6924). Defendant does not invoke any of the Family Code exceptions, relying instead solely on Section 1295.

### B. Plaintiff Disaffirmed the Contract

No specific act or language is required to disaffirm an agreement pursuant to section 6710, and the filing of a lawsuit is sufficient to do so. (*Coughenour*, *supra*, 57 Cal.App.5th at 748.) Here, plaintiff disaffirmed the Agreement by filing the first amended complaint and he left no doubt as to his intentions by submitting his own declaration to the same effect. These facts are undisputed.

Defendant nonetheless suggests plaintiff is "bound by the claims made in the original [c]omplaint," including the allegation that he "entered into a contract for treatment with [defendant]." Defendant's only authority for this proposition is a case discussing the sham pleading doctrine. (*Larson v. UHS of Rancho Springs, Inc.* (2014) 230 Cal.App.4th 336, 343-346.) This doctrine, which "preclude[s] [plaintiffs] from amending complaints to omit harmful allegations, without explanation,

7

from previous complaints to avoid attacks raised in demurrers or motions for summary judgment" (*Deveny v. Entropin, Inc.* (2006) 139 Cal.App.4th 408, 425), has no application here. The first amended complaint does not omit the allegation that plaintiff entered into a contract with defendant—it *adds* the assertion that he disaffirmed it. The omission of plaintiff's causes of action premised on the existence of an enforceable contract is a straightforward consequence of his disaffirmance of the contract.

### C. *Plaintiff Was Entitled to Disaffirm the Agreement as a Principal*

Defendant contends, and plaintiff agrees, that if Father signed the Agreement as a principal himself, plaintiff would be a third-party beneficiary bound to arbitrate his claims against defendant. (See, e.g., *Doyle v. Giuliucci* (1965) 62 Cal.2d 606, 609 [predecessor to section 6710 did "not apply to contracts between adults and [was] therefore not controlling on the question of a parent's power to bind his child to arbitrate by entering into a contract of which the child is a third party beneficiary"] (*Doyle*).) The *Doyle* Court emphasized that because "minors can usually disaffirm their own contracts to pay for medical services [citations], it is unlikely that medical groups would contract directly with them. They can be assured the benefits of group medical service only if parents can contract on their behalf. Unless such contracts unreasonably restrict minors' rights, they should be sustained." (*Ibid.*)

The Agreement in this case, however, was not a "contract[ ] between adults." (*Doyle, supra,* 62 Cal.2d at 609.) By the express terms of the Agreement, Father signed as plaintiff's representative or agent. Defendant does not grapple with this

dispositive language. Instead, defendant emphasizes a sentence in Father's declaration that states "[Father] entered a contract . . . on [plaintiff's] behalf."[5] Defendant is apparently of the view that Father's statement dispenses with any need to consult the Agreement itself because Father "is a lawyer" and it is "reasonable to assume precision of language by him." Defendant's analytical approach (privileging the diction of a declaration over the terms of the Agreement) runs contrary to fundamental tenets of contract law. (*Montrose Chemical Corp. v. Superior Court* (2020) 9 Cal.5th 215, 230 [clear and explicit contractual language reflects the parties' mutual intentions].)

Defendant's alternative contention that the Agreement is not "a contract of a minor" because plaintiff did not personally sign it also lacks merit. There is no plausible construction of "a contract of a minor" that does not include all contracts of which a minor is a principal. In *Berg v. Taylor* (2007) 148 Cal.App.4th 809, the Court of Appeal held that a minor plaintiff was entitled to disaffirm a contract "signed [only] by a parent" because the minor "was not a third party beneficiary of the agreement signed

---

[5] Contrary to defendant's argument, even Father's phrasing does not cast plaintiff as a third-party beneficiary of the contract. It is commonplace to say that an agent acts *on behalf of* a principal. (See, e.g., *Dones v. Life Ins. Co. of North America* (2020) 55 Cal.App.5th 665, 689 ["'[A]n agent is ordinarily not liable on the contract when he acts *on behalf of* a disclosed principal'"], emphasis added; 7 Witkin, Cal. Procedure (6th ed. 2022) Trial, § 102 ["an agent, in executing [a arbitration] agreement *on behalf of* the principal, may retain his or her own right to a jury trial even though the agreement waives the principal's right"], emphasis added.)

9

by his mother, but a principal." (*Id*. at 818-819.) In other words, there is no general parental-signature exception to section 6710.[6]

> **D.** *Defendant Failed to Establish Any Exception to Plaintiff's Right to Disaffirm the Agreement*

Defendant contends plaintiff was precluded from disaffirming the Agreement under Section 1295. Section 1295, subdivision (a) provides, in pertinent part, that "[a]ny contract for medical services which contains a provision for arbitration of any dispute as to professional negligence of a health care provider" shall include a specific warning regarding the effect of the arbitration provision. Subdivision (d) provides that "[w]here the contract is one for medical services to a minor, it shall not be subject to disaffirmance if signed by the minor's parent or legal guardian." Defendant points to its staff's medical credentials and the nature of the treatment offered and contends subdivision (d) applies because the contract was "one for medical services to a minor." But subdivision (d)'s use of the definite article ("[w]here *the* contract is one for medical services") indicates that subdivision must be understood in light of subdivision (a) such

---

[6] Defendant's reliance on *Doyle* for the proposition that disaffirmance in these circumstances will make it impossible for children like plaintiff to obtain the treatment they need ignores the straightforward solution offered in *Doyle*. Defendant need only have secured an agreement by Father, in his own right, for the benefit of plaintiff. (See, e.g., *Aaris v. Las Virgenes Unified School Dist.* (1998) 64 Cal.App.4th 1112, 1120 [holding that a minor plaintiff was bound by a release signed by her mother, in which the mother agreed as, "I, the undersigned," to release claims against the defendant school district].)

10

that it applies only to contracts for medical services involving a health care provider.[7]  This is significant because subdivision (g) defines "health care provider" to mean persons and entities licensed under specific statutes.[8]  (§ 1295, subd. (g)(1).) Defendant made no attempt to establish it satisfies this definition at trial, and it concedes the point on appeal.

---

[7]     Construing Section 1295, subdivision (d) to apply to contracts for medical services involving health care providers as defined in subdivision (g) is consistent with the basic principle that ""statutory language must . . . be construed in the context of the statute as a whole and the overall statutory scheme . . . .'" [Citation.]" (*People v. Arroyo* (2016) 62 Cal.4th 589, 593.) Several subdivisions of Section 1295 impliedly incorporate subdivision (a)'s specification of a "contract for medical services which contains a provision for arbitration of any dispute as to professional negligence of a health care provider."  Subdivision (b) requires a warning to appear "[i]mmediately before the signature line provided for the individual contracting for *the medical services*" (emphasis added); subdivisions (c) and (e) refer to "such a contract"; and, as we have already mentioned, subdivision (d) refers to "the contract."

[8]     "'Health care provider' means any person licensed or certified pursuant to Division 2 (commencing with Section 500) of the Business and Professions Code, or licensed pursuant to the Osteopathic Initiative Act, or the Chiropractic Initiative Act, or licensed pursuant to Chapter 2.5 (commencing with Section 1440) of Division 2 of the Health and Safety Code; and any clinic, health dispensary, or health facility, licensed pursuant to Division 2 (commencing with Section 1200) of the Health and Safety Code. 'Health care provider' includes the legal representatives of a health care provider[.]"  (§ 1295, subd. (g)(1).)

Without seriously disputing this construction of Section 1295, subdivision (d), defendant suggests the Legislature did not intend to limit its application based on "[t]echnical licensing issues." But Section 1295 is hardly unique among statutes limiting a minor's right to disaffirm contracts in raising "technical licensing issues." Section 6924, for instance, which precludes disaffirmance of certain contracts for mental health treatment or counseling, applies to contracts for treatment from, among others, a "professional person" defined to include persons licensed under various statutes. (§ 6924, subd. (a)(2).) Section 6710's default rule that a minor may disaffirm a contract is subject only to "express" statutory exceptions. (§ 6711.)

12

## DISPOSITION

The order denying the motion to compel arbitration is affirmed.  Plaintiff shall recover his costs on appeal.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS



BAKER, J.

We concur:


RUBIN, P. J.


MOOR, J.