Filed 9/23/24  Myers v. Skateland Enterprises CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| GERALDINE MYERS,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>SKATELAND ENTERPRISES, INC.,<br><br>    Defendant and Respondent. | B328404<br><br>(Los Angeles County Super. Ct. No. 21STCV09851) |

 APPEAL from a judgment of the Superior Court of Los Angeles County, Lynne M. Hobbs, Judge.  Affirmed.

 Law Offices of Theida Salazar and Theida Salazar for Plaintiff and Appellant.

 Amaro | Baldwin, Michael L. Amaro and Sanaz Cherazaie for Defendant and Respondent.

_____

Geraldine Myers was injured in a fall at a roller-skating rink after another skater bumped her arm.  She sued rink owner Skateland Enterprises, Inc.  On de novo review of Skateland's motion for summary judgment, we conclude that the assumption of risk doctrine forecloses Myers's claims.

Myers concedes that skating is inherently risky and did not show that Skateland increased the risks of injury beyond those inherent to skating.  There are no triable issues of disputed fact.  We affirm the judgment for Skateland.

## FACTS AND PROCEDURAL HISTORY

### Myers's Complaint

On December 29, 2019, Myers went to Skateland in Northridge.  She was struck from behind on the skating floor by defendant Jason Lee.[1]  Myers lost her balance and fell, sustaining arm and hand injuries that required treatment at a hospital.

Myers sued Skateland for negligence and premises liability.  She alleged that it lacked trained personnel "to prevent the wild skating of Defendant Lee."  The lack of safety measures and monitoring presented "a risk of the massively unsafe skating" that led to her injuries.

### Skateland's Motion for Summary Judgment

Skateland sought summary judgment on the grounds that Myers assumed the risk of injury by engaging in a sport with an inherent risk of falling.  Skateland argued that it did not increase the risk of injury and owed Myers no duty, as a matter of law.  Myers admitted in her deposition that she knows skaters may collide and has witnessed collisions and falls in rinks.

---

[1] Defendant Lee is not involved in this appeal.

Skateland's president declared that closed circuit television video (CCTV) images show Myers's skating session.[2] Three floor guards in black and white referee shirts were skating on the floor. A director supervising the floor had a microphone to make public announcements. About 150 skaters were present, which was not overly crowded. Industry guidelines recommend one floor guard for every 200 skaters.

CCTV images show Myers being bumped by a skater who made contact with her outstretched arm when he passed her. This "incidental contact between skaters . . . is endemic in the activity," according to Skateland's president.

Skateland's manager averred that three floor guards in referee shirts skated with patrons. The manager was alerted that a patron was skating too fast. She spoke to him and advised him to skate safely, control his speed and be mindful of others. There were no further complaints about him. Later, the same man bumped into Myers.

### Myers's Opposition

Myers did not dispute that skating involves a risk of being bumped or pushed by others, or that there can be contact during skating, or that she could get injured. She wrote, "Geraldine asserts that she is fully aware of the assumption of risk when skating in skating rinks."

Myers claimed that floor guards were not in the rink. The disc jockey, the program director, and the manager are not floor guards because they have permanent stations and cannot "stop

---

[2] Myers did not object to the admissibility of the CCTV images or deny that her fall can be seen in them.

speedy skaters." Myers contended that the incident would not have occurred if more skate guards were on the premises.

She argued that "for the past 40 years of skating she has never succumbed to a fall" or been bumped because other rinks are better regulated. Myers admitted that Skateland's manager spoke to defendant Lee and instructed him to slow down. She claimed that Lee ignored the instruction and bumped her when she obeyed a "stop skating" instruction while employees removed gum from the skating surface. Myers did not submit an expert declaration showing that the skating rink was improperly maintained or staffed.

### The Trial Court's Ruling

The court wrote that it is undisputed that "bumping into other skaters and falling is an inherent risk of roller skating, especially in a group setting such as the [one] that Plaintiff participated in on the night of the incident." The only issue is whether Skateland "unreasonably increased the risks to Plaintiff over and above those inherent in roller skating."

Skateland had several floor guards on the skating surface for 150 patrons, which exceeded industry standards suggesting one guard for every 200 skaters. Myers offered no evidence that Skateland violated industry standards. CCTV tapes show two skate guards, and Myers slowly skating when her arm was bumped by a man skating past her.

The court concluded that assumption of risk applies and Skateland did not increase the risk of harm. Myers failed to show a triable issue that the number of skate guards was inadequate or that the skater who bumped her was skating recklessly or fast when they collided. Instead, "The accident appears to be a low-speed interaction that caused Plaintiff to lose

4

her balance and fall." The court granted summary judgment and entered judgment for Skateland.

**DISCUSSION**

**1. Appeal and Review**

The judgment is appealable. (Code Civ. Proc., §§ 437c, subd. (m)(1), 904.1, subd. (a)(1).) A motion for summary judgment must be granted if no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law. (§ 437c, subd. (c).) The procedure enables courts to cut through the pleadings and determine if trial is necessary. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.)

We independently examine the record to determine if triable issues exist. (*Johnson v. American Standard, Inc.* (2008) 43 Cal.4th 56, 64.) Evidence presented in opposition to summary judgment is liberally construed. (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618.)

**2. Elements of Myers's Claims**

The elements of negligence and premises liability claims are the same. Myers must prove a legal duty of care and a breach of that duty that proximately causes injury. (*Kesner v. Superior Court* (2016) 1 Cal.5th 1132, 1158; *Ladd v. County of San Mateo* (1996) 12 Cal.4th 913, 917–918 [negligence]; *Ortega v. Kmart Corp.* (2001) 26 Cal.4th 1200, 1205 [premises liability]; *Castellon v. U.S. Bancorp* (2013) 220 Cal.App.4th 994, 998.)

**3. Assumption of the Risk Doctrine**

Primary assumption of risk applies when a defendant owes no duty to protect a plaintiff from harm, as a matter of law and policy. (*Avila v. Citrus Community College Dist.* (2006) 38 Cal.4th 148, 161.) When determining if a duty is owed, the focus is on the nature of a sport or activity and the defendant's role in

5

it.  (*Ibid.*)  "[T]he existence and scope of a defendant's duty of care is a *legal* question . . . to be decided by the court, rather than the jury.  [Citation.]  Thus, the question of assumption of risk is much more amenable to resolution by summary judgment." (*Knight v. Jewett* (1992) 3 Cal.4th 296, 313.)

A defendant has no duty to eliminate or protect against risks inherent in a sport, but cannot unreasonably "increase the risks to a participant over and above those inherent in the sport." (*Knight v. Jewett, supra,* 3 Cal.4th at pp. 315–316.)  The same rule applies to recreational activities.  (*Nalwa v. Cedar Fair, L.P.* (2012) 55 Cal.4th 1148, 1155–1156, 1162 (*Nalwa*).)  State policy seeks "to avoid chilling vigorous participation in or sponsorship of recreational activities by imposing a tort duty to eliminate or reduce the risks of harm inherent in those activities," possibly causing them to be altered or abandoned.  (*Id.* at p. 1156.)

A person engaging in an inherently risky activity assumes a risk of injury.  Collisions between skaters in a rink are an inherent risk of skating.  (*Staten v. Superior Court* (1996) 45 Cal.App.4th 1628, 1634.)[3]  Recreation provider Skateland need not *decrease* inherent risks; however, it cannot *increase* the risks of injury beyond those inherent in the activity.  (*Nalwa, supra,* 55 Cal.4th at p. 1162; *Aaris v. Las Virgenes Unified School Dist.* (1998) 64 Cal.App.4th 1112, 1120 (*Aaris*); *Balthazor v. Little League Baseball, Inc.* (1998) 62 Cal.App.4th 47, 52.)

---

[3] Numerous states (Michigan, New Jersey, Illinois, North and South Carolina, Ohio, Indiana, Georgia, and Maine) have enacted laws deeming that skaters assume the risk of collisions and falls.

### 4. Myers Did Not Show Breach of a Duty

Myers does not contest that skating is inherently risky or deny that she assumed a risk of injury by patronizing Skateland's rink. Her only claim is that Skateland increased the risk of harm beyond what is inherent in skating. No evidence supports her claim.

Myers argues that Skateland "failed to have a proper number of skate guards" on its premises. Unrefuted evidence shows (a) there were 150 patrons on the skating surface, (b) industry standards recommend one skate guard per 200 skaters, (c) Skateland's president declared that there were three skate guards, and (d) CCTV images show two skate guards near Myers. Skateland proved that it met industry safety standards, and Myers did not submit contrary evidence.

Myers argues that Lee ignored Skateland's instructions to slow down, then "harshly" bumped her. CCTV images do not support her claim. They show Myers and Lee moving slowly after Skateland suspended skating to remove gum from the floor. Lee clipped Myers's arm as he skated past, causing her to lose balance. This incidental contact could not have been prevented by more skate guards or warnings. It is inevitable that a skater may move unexpectedly, or throw out an arm, resulting in unintended contact with another skater and a potential loss of balance. Skateland had no duty to decrease that inherent risk. (*Aaris, supra,* 64 Cal.App.4th at p. 1120.)

Myers opines that Skateland could have acted differently by removing skaters from the rink while it was being cleaned rather than having them halt. Myers did not dispute that she was starting to skate after leaving the carpeted area. CCTV images show Lee entering the floor behind Myers, and a collision

7

as he passed her; thus, they did, in fact, exit the skating floor and it did not prevent a collision. Myers's opinion does not raise a triable issue when there is no evidence that Skateland increased the inherent risks of the skating. (*American Golf Corp. v. Superior Court* (2000) 79 Cal.App.4th 30, 39.)

Short of fundamentally changing skating by encasing skaters in a mound of bubble wrap, the possibility of injury cannot be avoided as skaters turn, slow, and speed up while maneuvering around the rink, creating an inherent risk of collisions. (See *Nalwa, supra,* 55 Cal.4th at pp. 1157–1158 [a recreational activity like bumper cars cannot eliminate risks of collision and injury without changing its character, which involves sudden changes in speed and direction].)

In sum, the risk of collisions is inherent in skating. Skateland "had no duty of ordinary care to prevent injuries from such an inherent risk of the activity. The absence of such a duty defeats plaintiff's cause of action for negligence as a matter of law." (*Nalwa, supra,* 55 Cal.4th at p. 1163.) To the extent that Myers argues that Skateland failed to take measures to minimize collisions, her argument fails. (*Id.* at pp. 1163–1164.) Myers did not carry her burden of showing that Skateland "unreasonably increase[d] the risks of injury beyond those inherent in the activity." (*Id.* p. 1162) The trial court properly granted Skateland's motion for summary judgment.

**DISPOSITION**

The judgment is affirmed.  Respondent Skateland is awarded its costs on appeal.

NOT TO BE PUBLISHED.


LUI, P. J.

We concur:


ASHMANN-GERST, J.


CHAVEZ, J.