Filed 1/17/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| MARK OLSON, | 2d Civ. No. B324465 |
| | (Super. Ct. No. 20CV02207) |
| Plaintiff and Appellant, | (Santa Barbara County) |
| v. | |
| PATRICK SAVILLE, | |
| Defendant and Respondent. | |

In this personal injury case, we hold the doctrine of primary assumption of the risk bars liability for injuries caused by a negligent surfer to a fellow surfer because those injuries were caused by risks inherent in the sport of surfing.

Mark Olson appeals from the order granting summary judgment for respondent Patrick Saville. Appellant contends that triable issues of material fact exist as to whether respondent is protected by the primary assumption of risk doctrine. We disagree and will affirm.

FACTUAL AND PROCEDURAL BACKGROUND[1]

Appellant and respondent were surfing in a group at Miramar Beach in Montecito.  Respondent was riding a custom longboard without a leash.[2]  Appellant caught a wave.  Respondent then "appeared out of nowhere" and "dropped in" on the wave without looking in appellant's direction.[3]  This forced appellant "to make a fast turn correction to his left toward the beach" and to "exit into the white water to his left."  Appellant "grabbed both [of] his board rails (aka sides) and pushed himself and the nose of the board slightly down and into the foam pile of whitewater toward the deeper water and away from respondent."  Respondent was still standing on his board heading toward the shore.  As appellant made his exit and ducked into the wave, respondent's board propelled backward and struck appellant's torso and back.

Appellant sued respondent for negligence.  He alleged that respondent "intentionally entered the wave and intentionally cut off appellant's path of travel, thereby forcing appellant to exit the

_____

[1] We rely on undisputed facts and allegations in the complaint.

[2] A longboard is a board that is "typically longer than nine feet in length."  (Paul Caprara, Surf's Up:  The Implications of Tort Liability in the Unregulated Sport of Surfing (2008) 44 Cal. Western L.Rev. 557, 573, fn. 90 (Caprara).)  Respondent's longboard was 10 feet 4 inches long.  A leash is a cord that attaches the ankle of the surfer to the tail end of the board.

[3] "Dropping in" or "shoulder-hopping" describes a surfer getting in the right of way of another surfer who is surfing the same wave."  (Caprara, *supra*, 44 Cal. Western L.Rev. at p. 571.)

wave." He further alleged that respondent's "failure to use a leash to control [his] longboard" and his use of a "sharpened and deadly fin" was "reckless and displayed a w[a]nton disregard for the safety of others." Respondent moved for summary judgment on the ground that appellant's cause of action was barred under the primary assumption of risk doctrine. The trial court granted the motion, finding "the inherent risks of the sport of surfing include surfers 'dropping in' on other surfers, not wearing leashes while riding longboards of the type used by respondent, and using surfboards that have sharp fins."

## DISCUSSION

Appellant does not dispute that the primary assumption of the risk doctrine applies to surfing. He contends, however, that summary judgment is not appropriate because triable issues of material fact exist as to whether respondent acted recklessly or increased the sport's inherent risks.

### *Standard of Review*

"[A] motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).)[4] A defendant moving for summary judgment "bears the burden of persuasion that 'one or more elements of' the 'cause of action' in question 'cannot be established,' or that 'there is a complete defense' thereto. [Citation.]" (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*); § 437c, subd. (p)(2).)

"A defendant seeking summary judgment on the basis of primary assumption of the risk must establish 'that the

---

[4] All unlabeled statutory references are to the Code of Civil Procedure unless otherwise stated.

defendant owed no legal duty to the plaintiff to prevent the harm of which the plaintiff complains.' [Citation.]" (*Capri v. L.A. Fitness International, LLC* (2006) 136 Cal.App.4th 1078, 1087.) If the defendant meets this burden, the burden of production shifts to the plaintiff to "set forth the specific facts showing that a triable issue of material fact exists." (§ 437c, subd. (p)(2); *Aguilar*, *supra*, 25 Cal.4th at p. 849.) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar*, at p. 850, fn. omitted.)

"On appeal from the granting of a motion for summary judgment, we examine the record de novo, liberally construing the evidence in support of the party opposing summary judgment and resolving doubts concerning the evidence in favor of that party." (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460.)

*Primary Assumption of Risk*

The primary assumption of risk doctrine "precludes liability for injuries arising from those risks deemed inherent in a sport." (*Avila v. Citrus Community College Dist.* (2006) 38 Cal.4th 148, 161.) It "rests on a straightforward policy foundation: the need to avoid chilling vigorous participation in or sponsorship of recreational activities by imposing a tort duty to eliminate or reduce the risks of harm inherent in those activities. It operates on the premise that imposing such a legal duty 'would work a basic alteration—or cause abandonment' of the activity." (*Nalwa v. Cedar Fair, L.P.* (2012) 55 Cal.4th 1148, 1156 (*Nalwa*), quoting *Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1003 (*Kahn*).) The doctrine applies both to sports

4

and recreational activities "'involving an inherent risk of injury to voluntary participants . . . where the risk cannot be eliminated without altering the fundamental nature of the activity.'" (*Nalwa*, at p. 1156, quoting *Beninati v. Black Rock City, LLC.* (2009) 175 Cal.App.4th 650, 658.)

"[D]efendants generally do not have a duty to protect the plaintiff from the risks *inherent* in the sport, or to eliminate risk from the sport, although they generally do have a duty not to increase the risk of harm *beyond* what is inherent in the sport." (*Kahn, supra*, 31 Cal.4th at p. 1004, citing *Knight v. Jewett* (1992) 3 Cal.4th 296, 315-316 (*Knight*), italics added.) A coparticipant breaches this duty only if he "intentionally injures another player or engages in conduct that is so reckless as to be totally outside the range of the ordinary activity involved in the sport." (*Knight*, at p. 320.) "[C]onduct is within the range of ordinary activity involved in a sport if that conduct cannot be prohibited without deterring vigorous participation in the sport or otherwise fundamentally altering the nature of the sport." (*Freeman v. Hale* (1994) 30 Cal.App.4th 1388, 1396.) Determining the nature of a defendant's legal duty (and the inherent risks that flow from the activity) "depends heavily on the nature of the sport itself." (*Knight*, at p. 317.)

*Appellant's Injuries Resulted from*
*the Inherent Risks of Surfing*

"Judges deciding inherent risk questions under *Knight* may consider not only their own or common experience with the recreational activity involved but may also consult case law, other published materials, and documentary evidence introduced by the parties on a motion for summary judgment." (*Nalwa, supra*, 55 Cal.4th at p. 1158.) Courts generally do not consider

5

the legal conclusions of expert declarations but can receive "expert testimony on the customary practices in an arena of esoteric activity for purposes of weighing whether the inherent risks of the activity were increased by the defendant's conduct.' [Citation.]" (*Kahn*, *supra*, 31 Cal.4th at p. 1017.) Our de novo review includes such declarations to the extent they help us understand the sport of surfing. (*Towns v. Davidson* (2007) 147 Cal.App.4th 461, 472-473, italics omitted ["A court in its discretion could receive expert factual opinion to inform its decision on these issues, particularly on the nature of an unknown or esoteric activity, but in no event may it receive expert evidence on the ultimate legal issues of inherent risk and duty."]; *Kahn, supra,* 31 Cal.4th at p. 1017 [same].)

California courts have applied the doctrine to coparticipants in a variety of sports, such as snow skiing and other non-contact sports, but not yet to surfing. (*See*, *Cheong v. Antablin* (1997) 16 Cal.4th 1063, 1066 (*Cheong*) [holding the doctrine barred a skier's negligence claim against another skier who unintentionally injured him in a collision]; *Shin v. Ahn* (2007) 42 Cal.4th 482, 486 (*Shin*) [extending the doctrine to apply to the non-contact sport of golf].) We note that snow skiing and surfing have much in common: (1) "both sports involve individual participants that use nature, either a mountain slope or wave, as a propulsion mechanism"; (2) "[b]oth require similar equipment in the form of skis, snowboard, or surfboard to participate"; and (3) "the most important similarity between skiing and surfing is the use of the right-of-way custom to promote safety and order among participants." (Caprara, *supra*, 44 Cal. Western L.Rev. at p. 562.)

6

Respondent submitted the declaration of Ian Cairns, a champion surfer and coach, who opined that surfing is an "extreme sport" with "many inherent risks." Cairns stated it is "extremely common for surfers to 'wipe out'" and lose control of their board given the variability of ocean conditions. "Because 'wipeouts' are so common, it is a known risk that a surfer may collide with another surfer, or another surfer's board." He explained the sport is largely regulated by unwritten safety customs and practices he referred to as "'surfing etiquette.'" (citing Caprara, *supra*, 44 Cal. Western L.Rev. at p. 571.) He stated, "[t]hese rules encompass such things as priority, right-of-way, and sharing waves." Nonetheless, "violating this surfing etiquette is common among surfers." He further opined it is "not uncommon for surfers to surf without a leash" and "[m]any longboard surfers particularly enjoy the challenge and freedom of surfing without a leash" which otherwise could interfere with their footwork and speed. Lastly, Cairns noted that surfboards "contain between one and four fins, which assist the board with speed and stability" and that the fins are "very sharp and can inflict significant injury."

Appellant's expert did not oppose the core components of Cairn's opinion. He did not dispute that surfers often violate well-established rules of etiquette. The experts appear to agree that surfers commonly collide and lose control of their boards; that boards have sharp fins that can cause injury; and that some surfers choose to forego leashes because they can inhibit speed and agility. The undisputed evidence shows that appellant's injuries resulted from these risks. We agree with the trial court that the primary assumption of the risk doctrine bars appellant's

negligence claim absent evidence that respondent recklessly or increased the sport's inherent risks.

### *There Is No Evidence Respondent Acted Recklessly or Increased the Inherent Risks of Surfing*

Appellant relies primarily upon surfing expert Shaun Tomson to support his contention that respondent's conduct was reckless. Tomson explained that "[o]ver time, the sport of surfing has adopted the Surfing Code and Rules of Etiquette." According to Tomson, "surfers have a self-managed obligation to observe the Surfers Code and Rules of Etiquette and not increase the risk of harm to others in the water." He described the rules of etiquette as follows: (1) observe the right of way of others; (2) look for other surfers before entering the wave; (3) do not interfere with, "drop in" or cut off surfers already riding a wave; (4) hold onto and do not let go of your board; (5) wear a surf leash so you do not lose control of your board; and (6) be aware and communicate with others around you. Tomson opined that respondent's blatant disregard of these rules constituted a "conscious and wanton reckless disregard" for the safety of fellow surfers, especially considering his experience in the sport.

Tomson supported his conclusions by citing the "Leash/Legrope Policy" found in the International Surfing Association Rule Book (ISA), which he described as "the World Governing Body for [s]urfing and all related activities." The policy reads: "As a risk management precaution . . . the ISA has a mandatory leash/legrope policy at events, due to the potential risk to other participants." (*ISA Rule Book & Contest Administration Manual*, September 2023 Section D Competition Rules, subsection xvii (a), p.34.) The policy further states, "[f]ree surfing with or without a leash is at the rider's discretion

however the ISA recommends the use of a leash if there is a possible danger to third parties." (*Id.*, subsection xvii (b).)

Appellant analogizes respondent's failure to use a leash to the snowboarder's failure to use a retention strap in *Campbell v. Derylo* (1999) 75 Cal.App.4th 823. *Campbell* reversed the trial court's granting of summary judgment for plaintiff on the grounds of primary assumption of risk, finding defendant's failure to use a retention strap "increased the inherent risk of injury to coparticipants from a runaway snowboard." (*Id.*, at p. 829.) It noted that a local ordinance as well as a "Skier Responsibility Code" posted at the ski resort required their use. (*Ibid.*) The court also found that using a strap "would not impede or alter the sport of snowboarding" or "chill or deter vigorous participation." (*Id.*, at p. 830.) We do not consider *Campbell* analogous. No law governs the use of surfboard leashes. No signs were posted requiring their use at Miramar Beach. More significantly, appellant does not dispute Cairns' opinion that a leash can alter the nature of the sport by interfering with a longboard surfer's "footwork and speed" and by posing a tripping hazard to surfers who "walk" on their board. (Cf. *Szarowicz v. Birenbaum* (2020) 58 Cal.App.5th 146, 166 [ice hockey expert's testimony that "open ice check[ing]" in a "no-check" game increased the sport's inherent risks raised triable issues of fact to defeat summary judgment].)

Appellant's expert merely described what could be done to reduce the risks inherent in surfing. Showing respondent could have acted with more caution does not establish he acted recklessly. Reckless conduct is more than """inadvertence""" or """a failure to take precautions.""" (*Towns v. Davidson, supra*, 147 Cal.App.4th at p. 470, citing *Delaney v. Baker* (1999) 20 Cal.4th

23, 31-32.)  It requires a "''deliberate disregard" of the "high degree of probability"''" that an injury will occur.  (*Ibid*.)  Although both experts acknowledged respondent may not have followed the rules of etiquette, we are wary of relying too heavily on such guidelines when defining the scope of an activity's inherent risks.  (See, e.g., *Shin*, *supra*, 42 Cal.4th at p. 497, fn. 9 [failure to follow golf etiquette of yelling "fore" to minimize chance of hitting other golfers with ball does not justify imposing liability].)

The undisputed evidence here showed that failure to follow the rules of etiquette is common in the surfing community.  Appellant admitted:  (1) he has witnessed other surfers riding a longboard without a leash; (2) a leash could obstruct some movement of an advanced surfer; (3) he has witnessed prior collisions between surfers; (4) he has witnessed another surfer failing to maintain control of their board; and (5) he personally has had surfers "drop-in" or "shoulder-hop" on his wave.  Respondent's similar conduct, it follows, was not reckless or outside the range of the ordinary activity in surfing.

"'By eliminating liability for unintended accidents, the doctrine [of primary assumption of the risk] ensures that the fervor of athletic competition will not be chilled by the constant threat of litigation from every misstep, sharp turn and sudden stop.' [Citation]."  (*Cheong*, *supra*, 16 Cal.4th at pp.1071-1072.)  No trier of fact could reasonably find that respondent's conduct fell outside of the protection of the primary assumption of risk doctrine.  Vigorous participation in surfing "likely would be chilled if legal liability were to be imposed" in these circumstances.  (*Knight*, *supra*, 3 Cal.4th at p. 318.)

### DISPOSITION

Judgment is affirmed.  Respondent shall recover his costs on appeal.

CERTIFIED FOR PUBLICATION.


                                    CODY, J.


We concur:



        GILBERT, P. J.



        YEGAN, J.


11

Hon. Donna D. Geck, Judge
Superior Court County of Santa Barbara

_____

Law Office of Eric A. Woosley, Eric A. Woosley; The Law Offices of Bradford D. Brown, Bradford D. Brown, for Plaintiff and Appellant.

Freeman Mathis & Gary, Albert K. Alikin, Christian E. Foy Nagy, and Christopher J. Fleissner, for Defendant and Respondent.